IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BART LYONS,

    Plaintiff,               No. 2:11-cv-0268 GEB KJN P[1]

    vs.

FOLSOM MERCY HOSPITAL, et al.,

    Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff Bart Lyons, who is incarcerated at Konocti Conservation Camp, proceeds in forma pauperis and without counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on plaintiff's First Amended Complaint, against two Folsom Police Department officers, Sergeants Jason Browning and John Lewis,[2] pursuant to plaintiff's arrest, hospitalization and booking on January 26, 2010, and the related search of his residence. Pending is defendant's motion for summary judgment. (ECF Nos. 57-63.) Plaintiff filed an

---

[1] This action is referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and Local Rule 302(c).

[2] As explained below, defendant Lang could not be located for service of process and should therefore be dismissed from this action.

1

1  opposition (ECF No. 65), and defendant filed a reply (ECF No. 66).  The court thereafter
2  informed plaintiff of the requirements for opposing a motion for summary judgment, pursuant to
3  Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), and Rand v. Rowland, 154 F.3d 952, 957 (9th
4  Cir. 1998) (en banc) (ECF No. 69), and provided an opportunity for the parties to submit
5  supplemental briefing.  Plaintiff filed a supplemental opposition (ECF No. 70), and defendants
6  filed a supplemental reply (ECF No. 71).  For the reasons that follow, the court recommends that
7  defendants' motion for summary judgment be granted.
8  II. Background
9         This case proceeds on plaintiff's First Amended Complaint ("FAC"), filed March
10  8, 2011.  (ECF No. 10.)  Plaintiff concedes that, at all relevant times, he was under the influence
11  of methamphetamine, and was on parole as a registered narcotics offender.  The FAC alleges
12  that, on January 26, 2010, unidentified Folsom Police Department ("FPD") officers came to
13  plaintiff's residence, then detained and transported plaintiff to Folsom Mercy Hospital ("FMH").
14  At the hospital, defendant FPD Sergeant Browning was allegedly deliberately indifferent to
15  plaintiff's serious medical needs when he failed to exercise his discretion to impose a "5150
16  hold" on plaintiff (72-hour mental health admission and evaluation), rather than transporting
17  plaintiff to the Sacramento County Jail and booking him.  Plaintiff also challenges defendant
18  Browning's videotaping of plaintiff while hospitalized, the alleged showing of the video to
19  plaintiff's girlfriend, and Browning's alleged statements that he intended to show the video to
20  others.  In addition, plaintiff challenges the search of his residence conducted by defendant FPD
21  Sergeant Lewis, and Lewis' allegedly slanderous statements made during the search.
22         Pursuant to the court's liberal screening of the FAC, the undersigned determined
23  that the FAC may state the following potentially cognizable claims:  "the alleged violation of
24  plaintiff's Fourth and Fourteenth Amendment rights to be secure in his home against
25  unreasonable searches and seizures; plaintiff's Fifth and Fourteenth Amendment rights to due
26  process; and, possibly, based on defendants' allegedly invasive and improper use of a video

camera, plaintiff's First Amendment right to privacy, and Fifth Amendment right to be free from compelled self-incrimination." (ECF No. 14 at 2.)  Service of process was authorized for defendants Browning and Lewis, as well as defendant Lang, who was also identified as a FPD officer.  However, despite the court's assistance -- first, by directing plaintiff to attempt to obtain the information necessary to serve process on defendant Lang through discovery (ECF No. 32), then by directing defense counsel to attempt to provide plaintiff with the necessary information (ECF No. 37) (which resulted in the filing of a declaration by Folsom's Director of Human Resources that no employee by that name was employed by the City) -- attempted service on Lang remained ineffective, pursuant to the original response of the Folsom City Attorney that the name was "unknown" (ECF No. 35).  As a result, defendant Lang should be dismissed from this action.

Originally named defendants Folsom Police Department and Mercy Folsom Hospital were dismissed from this action on December 2, 2011.  (ECF Nos. 24, 30.)  Discovery closed on September 28, 2012.  (ECF No. 36.)  Defendants aver that they "provided Plaintiff with all relevant documents related to his January 26, 2010 arrest, residential search and hospitalization that are in Defendants' custody or control." (ECF No. 58 at 3.)

Defendants Browning and Lewis now move for summary judgment on the ground that there exist no material factual disputes, rendering the allegations of the FAC "legally devoid of merit." (ECF No. 58 at 1.)

III.  Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

3

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

IV. <u>Undisputed Facts</u>

The following facts are undisputed by the parties or, following the court's review of the record, have been deemed undisputed for purposes of the pending motion.

1. On January 26, 2010, unidentified Folsom Police Department officers responded to a call reporting a suspicious subject at a residence on Sandy Creek Drive, where

1  they contacted plaintiff, placed him in custody and transported him to Mercy Folsom Hospital.

2          2. Plaintiff concedes that, at that time, he was under the influence of methamphetamine, on parole, and registered as a narcotics offender pursuant to California Health and Safety Code section 11590.  (See ECF Nos. 61-1 at 11, 14 (Plaintiff's Answers to Interrogatories); see also id. at 7 ("I was overdosed on meth").)  Plaintiff also concedes that, pursuant to his parole conditions, his person and residence were subject to search at any time of the day or night, with or without a search warrant, and with or without cause.  (Undisp. Fact. No. 3; Cal. Penal Code § 3067(a).)

         3. Shortly thereafter, defendant FPD Sergeant Jason Browning, who is trained as a Drug Recognition Expert, went to MFH to evaluate plaintiff.  Defendant Browning states that his examination of plaintiff revealed the following (ECF No. 60 at 1-2 (Decl. of Jason Browning)):

> His body movements were irregular, he was mumbling rapidly and accusing his girlfriend of drugging him with some unknown substance.  He also had an elevated pulse, high blood pressure, his pupils were slow to react to light stimulus and he had a fresh puncture wound to the inner crook of his arm.  Based on my examination and my training and experience as a certified DRE, I formed the opinion that Lyons was under the influence of a controlled substance, in violation of Health and Safety Code section 11550 and his parole conditions.

         4. Following this examination, defendant Browning video recorded plaintiff (id. at 2):

> Using a cell phone, I recorded Lyon's behavior.  This video was unable to be preserved and never downloaded to any computer or device.  It was deleted from the phone before this lawsuit was filed.

         5. Afterwards, while assisting plaintiff with putting on his clothes before transmitting him to jail, Browning discovered methamphetamine in plaintiff's pants pocket (id.):

> While assisting Lyons with putting his clothing on before transporting him to jail, I discovered a clear crystalline substance in his pants pocket.  This substance tested positive for the presence of methamphetamine.

6. Defendant FPD Sergeant John Lewis went to MFH, where he spoke with plaintiff and defendant Browning, and learned that plaintiff "was under the influence of methamphetamine and in the possession of methamphetamine in violation of his parole conditions." (ECF No. 59 at 1 (Decl. of John Lewis).)

7. Thereafter, Browning "transported Lyons to the Sacramento County Jail, were he was booked on violations of Health and Safety Code 11377 (possession of narcotics), Health and Safety Code 11550 (being under the influence of narcotics), and Penal Code 3056 (violations of parole)." (Browning Decl. at 2.)

8. Meanwhile, defendant Lewis, "along with agents from the California Department of Corrections and other law enforcement agencies, conducted a parole search of Lyons' residence." (Lewis Decl. at 1.)

V. Disputed Facts

1. Plaintiff alleges that defendant Browning showed the video of plaintiff to plaintiff's girlfriend, Amanda Martin, and offered to show it to her daughter and her classmates "to show them what an overdose on meth looks like." (ECF No. 61-1 at 7 (Plaintiff's Answers to Interrogatories).) In reply, defendants state that, "[f]or summary judgment purposes, [d]efendants do not dispute Lyons' (unsupported) allegation that the video taken by Sergeant Browning was shown to a third party. (ECF No. 66 at 3.)

2. Plaintiff also alleges that defendant Lewis, when conducting the search of his residence made "many slanderous comments" about plaintiff, including the false allegation that plaintiff had "burglariz[ed] homes in Folsom and confiscated a lot of electronics and computers." (Id.)

VI. Discussion

A. Plaintiff's Arrest, Hospitalization and Jail Booking

Plaintiff contends that defendant Browning was deliberately indifferent to plaintiff's serious medical needs when, following plaintiff's hospitalization, Browning chose to

7

transport plaintiff to the Sacramento County Jail and book him, rather than place plaintiff on a "5150 hold." Section 5150 of the California Welfare and Institutions Code provides for a 72-hour period of involuntary commitment, evaluation and treatment for a person who, as a result of a mental disorder or grave disability, presents a danger to himself or others.[3] Plaintiff states that he "was so drugged up I could hardly walk . . . [a] 5150 hold should've been placed on me to prevent me from harming myself or others." (ECF No. 61-1 at 7 (Plaintiff's Answers to Interrogatories).) Plaintiff avers that Browning was aware of this risk because he told Folsom Mercy Hospital staff that plaintiff was "crazy." (FAC at 3.)  However, plaintiff does not allege a specific injury, asserting only that "[t]he psychological impact of not receiving proper treatment is unknown. I do not feel the same." (ECF No. 61-1 at 7.)

Plaintiff has presented no evidence to sustain a federal constitutional claim based upon these allegations. The rights of pretrial detainees under the Fourteenth Amendment's Due Process Clause are assessed by the same standards as the rights of convicted prisoners under the Eighth Amendment. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citation omitted). The Eighth Amendment's proscription against cruel or unusual punishment includes the right to be free from harm caused by the deliberate indifference of correctional officials. "Deliberate indifference" to an inmate's serious medical needs is shown when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 835 (1994). As applied in

---

[3] California Welfare and Institutions Code section 5150 provides in pertinent part:

When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation.

the Ninth Circuit:

> Our test for deliberate indifference to medical need is two-pronged:
>
> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. . . .
>
> The second prong requires showing:
>
> (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. . . .
>
> [However], a prisoner need not show his harm was substantial.

Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation and punctuation marks omitted).

The present record is devoid of evidence to support either the objective or subjective components of plaintiff's deliberate indifference claim. Plaintiff has submitted no evidence demonstrating that being booked into the Sacramento County Jail, after discharge from FMH, presented -- or resulted in -- an excessive risk to plaintiff's health or safety. Thus, there is no basis upon which to find that defendant Browning booked plaintiff into the Sacramento County Jail despite his awareness that this alternative presented a substantial risk of harm to plaintiff. Moreover, plaintiff identifies no tangible injury. Similarly, plaintiff does not assert that his detention, arrest or booking were independently unconstitutional. Plaintiff's concessions to methamphetamine possession and use demonstrate probable cause for these official decisions. In the absence of any facts demonstrating that defendant Browning knew of and consciously disregarded a serious risk to plaintiff's health or safety, summary judgment is warranted for defendant on plaintiff's Fourteenth Amendment due process claim (premised on Eighth Amendment standards). See generally Toguchi v. Chung, 391 F.3d 1051, 1056-60 (9th Cir. 2004) (analyzing objective and subjective Eighth Amendment standards).

////

Moreover, as defendants contend, under state law, Browning is immune from liability for his decision to book plaintiff into the Sacramento County Jail, rather than place him on a 5150 hold. See Cal. Govt. Code § 856(a)(1) ("Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment: (1) Whether to confine a person for mental illness or addiction."). Liability may attach only for "injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out: (1) A determination to confine or not to confine a person for mental illness or addiction." Cal. Govt. Code § 856(c)(1). Because plaintiff has alleged no tangible injury, defendant Browning is immune from liability under California Government Code section 856. Additionally, as a public employee, defendant is more broadly immune from liability for choosing to book plaintiff. See Cal. Govt. Code § 821.6 ("A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.").

Accordingly, the undersigned recommends that summary judgment be granted for defendants on plaintiff's Fourteenth Amendment due process claim challenging plaintiff's arrest, hospitalization and jail booking.

B. <u>Videotape of Plaintiff</u>

Plaintiff challenges defendant Browning's videotaping of plaintiff during his hospitalization, and Browning showing the videotape to a third party (i.e. plaintiff's girlfriend). This court, on screening the FAC, construed this challenge as a potentially cognizable First Amendment claim for violation of plaintiff's privacy rights, and a potentially cognizable Fifth Amendment claim to be free from compelled self-incrimination. (ECF No. 14 at 2.) The court now addresses these matters, as well as the parties' Fourth Amendment arguments.

Plaintiff's concession of methamphetamine possession and use extinguishes his Fifth Amendment claim against self-incrimination. Plaintiff concedes that, at the time he was

videotaped, he was "drugged up" on methamphetamine and possessed methamphetamine in his pants pocket.

Pursuant to the Fourth Amendment, a criminal defendant can move to suppress evidence improperly obtained by law enforcement. In general, a criminal defendant has standing to move to suppress a video that conclusively links the defendant to illegal activity, if the video was not authorized by a warrant based upon probable cause. U.S. v. Taketa, 923 F.2d 665, 677 (9th Cir. 1991). "[T]he Fourth Amendment protects people, not places. What a person . . . seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v. U.S., 389 U.S. 347, 351-352 (1967). "To invoke the Fourth Amendment protections, a person must show that he had a legitimate expectation of privacy. A person demonstrates a legitimate expectation of privacy when that person has a (1) subjective expectation of privacy, and (2) an objectively reasonable expectation of privacy." U.S. v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979), and Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

These conditions are not met in the instant case. The facts and holding in United States v. George, 987 F.2d 1428 (9th Cir. 1993), are instructive. In George, the Ninth Circuit affirmed a district court decision finding no Fourth Amendment violation by police who entered the defendant's hospital room and searched the excrement in his bed pans for drug-filled balloons. Plaintiff was under arrest at the time. The Court of Appeals rejected plaintiff's claim that he retained a reasonable expectation of privacy, reasoning:

> Even if we assume that George had a subjective expectation of privacy in his hospital room, that expectation was not objectively reasonable. . . . George . . . did not voluntarily admit himself into the hospital; he was admitted under police supervision following his arrest. Based on the x-rays and George's condition, the police had probable cause to believe that George had the balloons in his stomach and that the balloons contained illegal narcotics. The police thus were justified in arresting George. Under these circumstances, it would be wholly unrealistic not to expect the police to place George under surveillance. . . . Any invasion of George's privacy was necessitated entirely by the unsavory method

> by which he chose to smuggle the drugs into this country and the time it took for him to expel the balloons. We therefore conclude that the district court did not err in refusing to suppress the heroin seized by the police.

United States v. George, 987 F.2d at 1432.

Relying on George, the Ninth Circuit subsequently upheld a district court's denial of a motion to suppress the government's warrantless videotape of a controlled delivery of a drug parcel in a hospital mailroom. The Court of Appeals reasoned in pertinent part:

> Public hospitals, by their nature, are institutions not only accessible to the community, but places in which the needs of security and treatment create a diminished expectation of privacy. The use of surveillance cameras in hospitals for patient protection, for documentation of medical procedures and to prevent theft of prescription drugs is not uncommon. Indeed, under the circumstances presented by that case [George], we have held that a defendant arrested and taken to the hospital had no objectively reasonable expectation of privacy in his hospital room.

United States v. Gonzalez, 328 F.3d 543, 547-48 (9th Cir. 2003) (citing George, 987 F.2d at 1432).

In the present case, there is no basis for finding that plaintiff had an objectively reasonable expectation of privacy during his hospitalization. Plaintiff was under arrest, and defendant Browning had probable cause to believe that plaintiff experiencing symptoms associated with the use of illegal drugs. It was not unreasonable for Browning, a specially-trained Drug Recognition Expert, to video document plaintiff's symptoms and behavior to provided an objective and tangible record in support of Browning's observations. Moreover, in light of plaintiff's concessions of illegal drug use and possession, any reliance on the videotape in plaintiff's subsequent criminal or parole violation proceedings was necessarily harmless. Therefore, plaintiff has failed to demonstrate any actionable violation of his Fourth Amendment rights.

Similar reasoning demonstrates no violation of plaintiff's First Amendment rights. Because the circumstances accorded plaintiff a significantly reduced expectation of privacy, there

is no basis for finding that Browning's videotaping of plaintiff violated his First Amendment privacy rights. "[T]he risk of a First Amendment violation is part of the analysis courts apply under the Fourth and Fifth Amendments." U.S. v. Mayer, 503 F.3d 740, 754 (9th Cir. 2007). Similarly, plaintiff has not articulated any reasonable basis for finding a First Amendment violation premised on defendant showing the videotape to plaintiff's girlfriend, or threatening (without more) to show the videotape to her daughter and schoolmates, or any damages therefrom.

Finally, plaintiff claims that Browning's disclosure of the videotape to his girlfriend violated plaintiff's federal statutory rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. 1320d et seq. HIPAA requires that any "covered entity" under the Act, specifically, a health plan, a health care clearinghouse, or a health care provider, obtain authorization before disclosing a patient's private health information. 45 C.F.R. §§ 160.103, 164.508. Because neither Browning, nor law enforcement generally, are a "covered entity" under HIPAA, the Act does not apply to Browning's challenged conduct.

Accordingly, summary judgment should be granted for defendants on plaintiff's challenges to Browning's videotaping of plaintiff while hospitalized, and showing the video to a third party, pursuant to plaintiff's claims under the First, Fourth, and Fifth Amendments, and HIPAA.

    C.   Search of Plaintiff's Residence

Plaintiff challenges, on Fourth and Fourteenth Amendment grounds, the search of his residence by defendant Lewis. Plaintiff contends that the search was improper because the residence had not yet been approved by plaintiff's parole agent as his "legal address." Plaintiff asserts that, at the time of the search, his request to change legal addresses was pending but had not yet been granted.

California parolees are subject to the condition that parole agents and other law enforcement officers may search them at any time without a warrant. Cal. Penal Code §

3067(b)(3). The conditions of plaintiff's parole included warrantless searches of his residence as well as his person. (See ECF Nos. 61-1 at 11, 14 (Plaintiff's Answers to Interrogatories).) A parolee subject to these search conditions can be searched even if the officer does not have a reasonable suspicion that the parolee had violated or was planning to violate the law or the conditions of his parole. People v. Reyes, 19 Cal.4th 743 (1998). These provisions are constitutional. Samson v. California, 547 U.S. 843 (2006).

Plaintiff has cited no authority in support of his claim that his current "residence" could not reasonably be construed to include his current place of habitation. As asserted by defendants, "[e]ither [plaintiff] lived there, making the residence searchable, or he did not, depriving him of standing to sue." (ECF No. 71 at 3.)

Plaintiff's additional claim that defendant Lewis slandered plaintiff during the challenged search, by allegedly saying untrue things about plaintiff to his girlfriend, fails to state a federal civil rights claim. Slander is a state law claim, see Cal. Civ. Code § 46, that may not be pursued under this court's pendant jurisdiction absent demonstration that plaintiff first complied with the claim presentation requirements of the California Tort Claims Act, see Cal. Gov. Code §§ 945 et seq. Plaintiff does not assert that he complied with these preliminary requirements. Even if he had, this court would decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all federal claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3).

For these reasons, summary judgment should be granted on plaintiff's claim that the search of his residence by defendant Lewis was unconstitutional.

VII. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 57), be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 24, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

lyon0268.msj